UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARTIN BURTON SCHMOLDT, III

      Plaintiff,

v.                                                          Case No. 3:12cv544/LC/CJK

WALTER JEFFERIS, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff, proceeding *pro se* and *in forma pauperis*, has filed a second amended civil rights complaint pursuant to 42 U.S.C. § 1983 (doc. 22).[1] The Court has not ordered the defendants to respond.  Upon review of plaintiff's second amended complaint, the Court concludes that it fails to state a claim upon which relief may be granted and thus should be dismissed under 28 U.S.C. § 1915A.

## BACKGROUND AND PROCEDURAL HISTORY

      According to the allegations in his complaint, plaintiff was arrested at approximately 2:30 a.m. on August 3, 2008, and transported to the Escambia County Jail.  (Doc. 30, p. 14).  At the time of his arrest, plaintiff was wearing only swim shorts.  (Doc. 30, pg. 14).  He was placed "in I-1 tank," adjacent to the intake desk, to await processing and slept until 4:30 a.m., at which time he woke up and requested

---

   [1] Plaintiff filed his first and, presumably, second amended complaint pursuant to an amend order (doc. 19), which was intended to assist plaintiff in correcting the deficiencies in his original complaint.

a blanket or jumpsuit because he was cold.  (Doc. 30, pg. 14).  In response to his request, plaintiff was verbally assaulted.[2]  (Doc. 30, pg. 14).  He attempted to clarify his request by yelling out to the desk; several officers then converged on the I-1 tank's lobby side door.  (Doc. 30, pg. 14).  Plaintiff went to meet them, intending to again request a blanket or jumpsuit; before plaintiff could make his request, however, an officer grabbed him by the wrist, causing him to "recoil reflexively."  (Doc. 30, pg. 14).  Plaintiff was then slammed face-down on the floor and beaten by several officers who "joined in a collaborative, aggravated assault and battery upon him." (Doc. 30, pg. 14).  Plaintiff claims that, as he lay still on the floor, a number of officers, including Deputy Walter Jefferis, Deputy Mark Hallford, Deputy Alma Upchurch, Deputy Jennifer Hudson, and Sergeant Sky Madison, "administered unconstitutional and cruel treatment in many forms of aggravated assault and battery upon his person," causing him to lose consciousness.  (Doc. 30, pg. 15).  When he awoke, "a man was squeezing his head, cussing in his face and prying his eyes wide open as someone discharged a long, steady stream of chemical pepper spray at point-blank range directly into both eyes."  (Doc. 30, pg. 15).  He claims that another strike, possibly a punch to the eye, caused him to lose consciousness again.  (Doc. 30, pg. 15).  He ultimately was handcuffed and further beaten despite the fact that he was "completely non-combative."  (Doc. 30, pg. 15).

Once restrained, "[p]laintiff was dragged approximately 100 feet up the hall, and there outside of T-3 tank, he was beaten again to the floor where witnesses couldn't see, but within sight of surveillance cameras."  (Doc. 30, pg. 15).  While crying and bleeding, plaintiff was locked in "T-3 holding tank" and eventually

---

[2] According to the plaintiff, the officer who verbally assaulted him had a "distinguishable accent."

received medical attention.   (Doc. 30, pg. 15).   "As the medical attendant unsuccessfully dug in his eyes with a swab or stick in search of his contacts, she had to stop to scold one of his attackers who stood behind her" and screamed obscenities at him as he was being treated.  (Doc. 30, pg. 15-16).  After he received medical treatment, plaintiff was moved to T-4, "where still undressed he shivered in agony." (Doc. 30, pg. 16).  Plaintiff apparently was allowed to dress at some point and was photographed and "[f]orced to move around as though nothing were wrong."  (Doc. 30, pg. 16).   Plaintiff was unable to see and "could hardly move through the excruciating pain."  (Doc. 30, pg. 15).  He nevertheless was transferred to the main jail, with his belongings and mattress in hand, and housed in its medium security Phase I section, where he was required to sleep on the floor due to overcrowding. (Doc. 30, pg. 16).

Plaintiff maintains that he is "extremely nearsighted, and was left virtually blind by his injuries and lack of corrective vision" and was "terrified and forced to rely upon the kindness of fellow inmate strangers."  (Doc. 30, pg. 16).  He contends that he should have been transported to a hospital or infirmary for treatment of his serious condition and that, without such treatment, he was "forced to suffer great humiliation, pain, and emotional turmoil including an extreme and still present fear and mistrust of law enforcement employees."  (Doc. 30, pg. 16).  Moreover, because of the lack of medical care, some of plaintiff's injuries "healed incorrectly, resulting in permanent disfigurement, discomfort and pain," all of which "serve as continual reminders of physical and emotional trauma for Plaintiff as well."  (Doc. 30, pg. 15). Specifically, plaintiff claims to have suffered "injury to his right retina during the beatings," which was "officially diagnosed" and surgically treated in 2011.  (Doc. 30, pg. 16-17).   According to plaintiff, he will continue to suffer long-term residual

effects of eye trauma, including severe headaches, visual distortion, reduced vision, probability of cataracts, and increased risk to eye health.  (Doc. 30, pg. 17).  Plaintiff also claims to suffer from "abdominal injury including an umbilical hernia as a result of these strikes to his stomach area, and permanent deformation to his left lower ribs, which were reported as damaged to medical staff at the jail."  (Doc. 30, pg. 17).  Plaintiff received no treatment for the damage to his ribs, which purportedly healed incorrectly and are now beyond repair.  (Doc. 30, pg. 17).

Plaintiff seeks to hold all of the defendants liable for his injuries, in both their individual and official capacities, claiming they violated his rights under "State and Federal law," including the Fourteenth Amendment to the United States Constitution, and intentionally inflicted emotional distress upon him.  Plaintiff seeks compensatory damages in the amount of $1,000,000.00 against each defendant except Jennifer Hudson, from whom he seeks $250,000 "jointly and severally," and he seeks punitive damages in the amount of $1,000,000.00 against each defendant except Hudson, from whom he seeks $200,000.00 "jointly and severally." (Doc. 30, pg. 24).  Plaintiff also requests that the defendants "be required to make equitable reimbursement to Vocational Rehabilitation in the exact amount expended by the organization to cover the costs (all) associated with Plaintiff's eye injury diagnoses and corrective procedures."  (Doc. 30, pg. 24).  Finally, plaintiff seeks costs, leave of court to "pursue any further medical costs arising from, or associated with the cause of action at a future date," and a "declaration that these officers did in fact violate his rights under the United States Constitution and under Florida State Law."  (Doc. 30,  pg. 24).

DISCUSSION

Because plaintiff is proceeding *in forma pauperis*, the court must dismiss his complaint if it determines that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).  The court must read plaintiff's *pro se* allegations in a liberal fashion.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Dismissals for failure to state a claim are governed by the same standard as FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).  *See Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997).  In determining whether the complaint states a claim upon which relief may be granted, the court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff.  *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).  The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and dismissing plaintiffs' case for failure to state a claim because plaintiffs had "not nudged their claims across the line from conceivable to plausible").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

A complaint also is subject to dismissal for failure to state a claim when the allegations—on their face—show that an affirmative defense bars recovery on the claim.  *See Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) (reiterating that principle and providing,

as an example, that if a complaint's allegations show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim). "To dismiss a prisoner's complaint as time-barred prior to service, it must 'appear beyond a doubt from the complaint itself that [the prisoner] can prove no set of facts which would avoid a statute of limitations bar.'" *Hughes v. Lott*, 350 F.3d 1157, 1163 (11th Cir. 2003) (quoting *Leal v. Georgia Dep't of Corr.*, 254 F.3d 1276, 1280 (11th Cir. 2001). A § 1983 action is governed by the forum state's general personal injury statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387, 127 S. Ct. 1091, 1094, 166 L. Ed. 2d 973 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-50, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989)). In Florida, there is a four-year personal injury statute of limitations. *See Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003); *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996); *see* Fla. Stat. § 95.11(3).

Although the *length* of the statute of limitations is resolved by reference to state law, the *accrual date* of a § 1983 action is governed by federal law. *Wallace v. Kato*, 549 U.S. at 388, 127 S. Ct. at 1095. Under federal law, the limitations period begins to run when the plaintiff knows or has reason to know "(1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003); *Brown v. Georgia Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (holding that the limitations period begins to run "from the date the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights"). "'This rule requires a court first to identify the alleged injuries, and then to determine when plaintiff[ ] could have sued for them.'" *Fisher v. City of Montgomery*, No. 2:10cv189-WKW, 2011 WL 671521, at *6 (M.D. Ala.

Feb. 17, 2011) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). "'The cause of action accrues even though the full extent of the injury is not then known or predictable.'" *Id.* (quoting *Wallace*, 549 U.S. at 391 (internal quotation marks and citations omitted)). "If the accrual rule were otherwise, 'the statute would begin to run only after plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief.'" *Id.* (quoting *Wallace*, 549 U.S. at 391).

Here, it is clear from the allegations of plaintiff's second amended complaint that he was injured on August 3, 2008.  It likewise is clear that he was aware of his injuries, as well as the individuals who allegedly inflicted them, on that date. Plaintiff's claims thus accrued on August 3, 2008.  *See, e.g., Baker v. City of Hollywood*, 391 Fed. Appx. 819, (11th Cir. 2010) (finding plaintiff's excessive force, failure-to-intervene, and retaliation claims time-barred because the events giving rise to the claims occurred on April 18, 2003, "when [plaintiff] was beaten at the holding facility," and it was clear "[f]rom the face of the complaint that [plaintiff] knew the facts underlying these claims" at that time); *Johnson v. Greaves*, No. 08-54-KD-C, 2009 WL 2060067, at *6 (S.D. Ala. June 22, 2009) (finding that "plaintiff knew of his claim for excessive force at the time that it occurred and could have filed an action on it at that time" and dismissing claim as frivolous because it was filed "well beyond" the expiration of the two-year statute of limitations).  Plaintiff did not file his complaint, however, until November 13, 2012, more than three months after the statute of limitations expired.  As a result, his claims are time-barred.

Plaintiff was warned in a previous amend order of the statute of limitations bar (doc. 19).  In an attempt to avoid its application, plaintiff filed a document titled "Evidence of Timely Filing" in which he stated that Lisa Sunderman, Regional

Counsel for the Federal Bureau of Prisons ("BOP"), allowed him a period of six months, beginning on October 19, 2012, in which to file suit.  *See* doc. 25.  The plaintiff attached a letter from Sunderman in which she addressed a claim he submitted to the BOP complaining of his alleged assault at the Escambia County Jail.  *See id.*  Sunderman explained that the facility at which the alleged assault occurred was a non-BOP facility and provided contact information for the Escambia County Sheriff's Department.  She also advised plaintiff that any federal tort claim arising out of the incident in question was barred by the applicable statute of limitations.  Finally, Sunderman informed plaintiff that, in the event he was dissatisfied with the BOP's determination, he had six months within which to challenge that determination by filing suit in federal court.

Sunderman's letter has no bearing on the running of the statute of limitations in this case.  Indeed, Sunderman's letter was written in response to a complaint plaintiff filed with the BOP, which has no jurisdiction over the Escambia County Jail or the claims asserted in this lawsuit.  The six months to which Sunderman referred was the time within which plaintiff could challenge the BOP's determination, not the time in which he could file suit regarding the events that occurred at the Escambia County Jail on August 3, 2008.  To the extent plaintiff relied on Sunderman's letter, therefore, such reliance was misplaced and neither tolled or extended the statute of limitations nor otherwise impacted the claims asserted in this matter.

In what appears to be a further attempt to salvage his claims, plaintiff alleges in his second amended complaint that he was "completely incapable of action during his custody under the defendants' agency" and that "ongoing medical issues have

affected the accrual date."[3]   With regard to the first point, plaintiff failed to allege any facts demonstrating that he was incapacitated during his incarceration at the Escambia County Jail, much less the duration of the alleged incapacitation.  In truth, many thousands of inmates in the custody of state and local officials do find themselves capable of filing federal civil actions each year.  With regard to the second point, as explained above, plaintiff's claims accrued on the date he suffered the alleged injuries, not when he was treated for them.

Accordingly, it is respectfully RECOMMENDED:

1.  That plaintiff's claims be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii) for plaintiff's failure to state a claim upon which relief may be granted.

2.  That the clerk be directed to close the file.

At Pensacola, Florida this 19th day of May, 2014.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] According to plaintiff, because he had surgery on his eye on June 29, 2011, "that date of service sets the accrual date in this matter."  (Doc. 30, pg. 14).

<u>NOTICE TO THE PARTIES</u>

 Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).